OPINION OF THE COURT
Raymond E. Cornelius, J.
The above-captioned taxpayer action has been commenced pursuant to General Municipal Law § 51. In essence, the plaintiff Rodney G. Miller, who is a taxpayer and otherwise qualified to bring the action, claims that payment of certain monies to, or on behalf of, the defendant Earl F. Gorton, Sr., constitutes an illegal disbursement of public funds. Payment was authorized by the adoption of two resolutions by the Town Board of the Town of Gorham and represents reimbursement for past benefits purportedly owed to Mr. Gorton, who retired in 1991 as Chief Water Plant/Sewer Plant Operator for the Town.
On June 12, 1991, at a regular meeting of the Town Board, a resolution was adopted accepting the resignation of Mr. Gorton effective September 1, 1991. However, prior to this latter date, it would appear that Mr. Gorton submitted claims for certain unused benefits. The complaint alleges that these benefits included unused sick time, compensatory time, and vacation, representing a total of 1,980 hours. On August 14, 1991, a resolution (156-1991) was unanimously adopted by the Town Board approving payment to Mr. Gorton in the amount of $4,390, which plaintiff alleges represented payment for 30 days of back vacation and 4 prospective days for the month of September. Immediately thereafter, the Town Board unanimously adopted another resolution (157-1991), which approved an additional 1,708 hours of benefits for Mr. Gorton amounting to $27,567 to "be used to pay his health insurance costs until the amount is used up.” In an affidavit verified October 6, 1994, the Supervisor of the Town of Gorham explains that *252 this action was taken in lieu of a cash payment in the amount of $27,567 in order to minimize the impact on the Town’s finances.
The relief demanded in the complaint includes a request for an order declaring the aforementioned resolutions to be illegal, enjoining the Town from authorizing future payments or payment of any health insurance premiums, and a direction that Mr. Gorton repay all sums wrongfully paid to him pursuant to the resolutions. The claim under General Municipal Law § 51 is based upon sections 90 and 92 of the same law. These statutes authorize governing boards of political subdivisions of the State, including towns, by ordinance, local law, resolution, order or rule, to provide for employee benefits such as overtime compensation, vacations, sick leave, and leaves of absence. Plaintiff contends that, absent such authorization, any resolution providing for payment would be violative of the constitutional prohibition against a gift of public funds, as contained in New York Constitution, article VIII, § 1. (See, Matter of Murray v Levitt, 47 AD2d 267 [3d Dept 1975]; Hess v Board of Educ., 41 AD2d 151 [3d Dept 1973].)
The plaintiff has now made a motion for summary judgment pursuant to CPLR 3212 premised upon the claimed failure to comply with General Municipal Law §§ 90 and 92. In support of the motion, plaintiff has submitted a copy of a detailed, written employee compensation and benefit policy, which was adopted by the Town Board on January 13, 1993, long after Mr. Gorton’s retirement. Nevertheless, it should be emphasized that the two resolutions, which are the subject of this action, were actually passed and adopted prior to the effective date of Mr. Gorton’s resignation. Furthermore, and contrary to the plaintiff’s contention that there was no formal prospective resolution in existence at the time of this employee’s resignation, it would appear that in certain years, at organizational meetings of the Town Board, motions had been passed pertaining to employees’ holidays, sick leave, and overtime. In fact, at the organizational meeting held in January 1967, Mr. Gorton was mentioned by name in connection with a resolution concerning sick leave, and in addition, the Town of Gorham Water District employees were specifically granted the same benefits as allowed to all their town employees. Admittedly, these actions were quite general in nature and there may well be a question whether or not they were sufficiently detailed to satisfy the requirements of General *253 Municipal Law §§ 90 and 92. (See, Matter of Murray v Levitt, 47 AD2d 267, supra.)
In addition to the foregoing, the defendants, in their response to the motion for summary judgment, have also raised the issue of the Statute of Limitations. This action was commenced on May 17, 1994, by filing the summons and complaint, and, as aforementioned, the two resolutions, which authorized payments to Mr. Gorton, were passed on August 14, 1991. The plaintiff submits that the applicable Statute of Limitations should be a six-year period pursuant to CPLR 213 (1), and relies primarily upon statements made by the Court in New York Pub. Interest Research Groups v Levitt (62 AD2d 1074 [3d Dept 1978]). In this decision, the Court indicated that it agreed with the findings of Special Term that a six-year Statute of Limitations period would be applicable to the action, commenced in 1977, challenging the legality of a contract made in 1965, and authorized, in part at least, by the adoption of article 7-A of the State Finance Law in 1975. The Court further observed, by dictum, that citizen taxpayers could have brought an action under General Municipal Law § 51 at any time since the execution of the contract, which involved construction of the Empire State Plaza.
It should be noted that article 7-A of the State Finance Law is comparable to General Municipal Law § 51, which creates a statutory cause of action against officials or employees of political subdivisions of the State by authorizing such actions against State officers or employees for illegal or unconstitutional acts. (State Finance Law § 123.) However, the Court of Appeals has explicitly held that a citizen taxpayer’s right of action for return of illegally paid funds commenced under the State Finance Law must be commenced within a period of one year, pursuant to CPLR 215 (4). This section provides that "an action to enforce a penalty or forfeiture created by statute and given wholly or partly to any person who will prosecute” must be commenced within such one-year period. (Matter of New York State Assn, of Plumbing-Heating-Cooling Contrs. v Egan, 65 NY2d 793 [1985].) Thus, it would follow that the Court of Appeals has deemed a citizen taxpayer action under article 7-A of the State Finance Law as one to enforce a penalty or forfeiture created by statute. This court believes the same rule should be applicable to citizen taxpayer actions commenced under General Municipal Law § 51, for reasons hereinafter set forth.
First, citizen taxpayer actions were unknown at common *254 law. The first known statute was enacted in 1872 (L 1872, ch 161) and was apparently prompted by fraudulent issuance and sale of bonds and the conversion or misappropriation of the proceeds thereof. (See, Ayers v Lawrence, 59 NY 192 [1874].) Although the various statutes authorizing such actions have undergone amendments and changes over the years, the purpose has always involved the prevention of waste or injury to public property because of the fraudulent or wrongful acts of public officers and agents. (See, Adamson v Union R. R. Co., 74 Hun 3 [1893].)
Furthermore, by the express terms of the statute, waste or injury, which consists, for example, of a town board allowing or paying any illegal claims, may be rectified by a court directing restitution and recovery either against the recipient or the defaulting official in order to "indemnify and save harmless” (General Municipal Law § 51) such political subdivision. Plaintiff contends that a citizen taxpayer lawsuit brought under the authority of the State Finance Law, unlike the General Municipal Law, constitutes an action to enforce a penalty or forfeiture because of the existence of section 123-h of that law. However, this particular section of article 7-A merely makes provision for the establishment of a special fund in the custody of the State Comptroller to consist of monies recovered as the result of such lawsuits. The fact that General Municipal Law § 51 does not contain a comparable provision for such a fund does not alter or detract from one of the main purposes of said section, namely, the recovery of monies by the citizen taxpayer for the benefit of a particular political subdivision.
Finally, although General Municipal Law § 51 also provides for other kinds of relief, such as a declaratory judgment or injunction, the Court of Appeals has consistently held that the mere showing of an illegal official act is insufficient to warrant such relief and has required proof of potential waste or injury to property as well. (Matter of Korn v Gulotta, 72 NY2d 363; Mesivta of Forest Hills Inst. v City of New York, 58 NY2d 1014 [1983].) Again, in the context of this case, this would involve enjoining the payment of monies to which the recipient would presumably be otherwise entitled, except for the alleged illegal act on the part of a town official.
Based upon the foregoing reasons, it is hereby ordered that the plaintiff’s motion for summary judgment pursuant to *255 CPLR 3212 is hereby denied, and it is further ordered, notwithstanding the absence of a cross motion, that summary judgment be awarded to the defendants pursuant to CPLR 3212 (b) and the action is hereby dismissed.